UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COREY SLAVEN,                        )
                                     )
          Petitioner,                )   CIVIL ACTION NO.
                                     )   16-CV-10436-DPW
v.                                   )
                                     )
LOIS RUSSO,                          )
Superintendent, MCI Concord,         )
                                     )
          Respondent.                )

MEMORANDUM AND ORDER
July 31, 2020

Corey Slaven was convicted in Barnstable County Superior
Court of sexual abuse of three underage girls, two of whom were
his nieces.  His jury-waived trial in the Superior Court
resulted in a sentence of ten to twelve years imprisonment,
followed by a period of probation.  In this federal collateral
attack under 28 U.S.C. § 2254 on his state court convictions,
Mr. Slaven challenges the decisions of his several trial-court
counsel not to seek suppression of pre-arraignment statements he
made to a Falmouth Police Officer.

**I**
**FACTUAL BACKGROUND**

In its review of the proceeding in the Superior Court
before Judge Rufo, who was both the trial and motion judge, the
Massachusetts Appeals Court summarized the facts.  These
findings are entitled to a presumption of correctness under 28

U.S.C. § 2254(e)(1).  *See, e.g., Gunter* v. *Maloney*, 291 F.3d 74,

76 (1st Cir. 2002); *Sanna* v. *DiPaolo*, 265 F.3d 1, 7 (1st Cir.

2001); *Coombs* v. *Maine*, 202 F.3d 14, 18 (1st Cir. 2000).

## A.   *Underlying Offenses*

With respect to offenses of conviction, the Appeals

Court relied upon the following facts in an unpublished

summary disposition:[1]

> Between 2001 and 2007, [Petitioner] lived in New York.
> However, from the time he was five years old until he
> was twenty, he would stay with his older sister and
> her family in Falmouth during school vacations and
> holidays. [Petitioner] also lived with his sister and
> her family for approximately six to seven months
> beginning in December of 2007.
>
> During the summer of 2001, when [Petitioner's] niece,
> S.B.,[2] was ten years old, there were numerous
> occasions when [Petitioner] touched her vagina and her
> "butt," and forced her to touch his penis.  In the
> summer of 2002, when [Petitioner's] other niece, A.B.,
> was nine years old, [Petitioner] began assaulting her
> in the same way.  When A.B. was twelve, [Petitioner]
> made her watch pornography with him, and when she was
> thirteen, he forced her to perform oral sex on him.
> S.C. was a friend of A.B.  When S.C. was sixteen years
> old, [Petitioner] choked her, forced her to have
> intercourse, and threated to harm her younger sister
> if she said anything.

---

[1] Although unpublished in the traditional reporter series for the
Massachusetts Appeals Court — the Mass. App. Ct. volumes and
West's Northeast Reporter volumes — memoranda accompanying such
dispositions are generally published through Westlaw.  When
referring to the "unpublished" memoranda issued by the
Massachusetts Appeals Court in connection with this matter, I
will in this opinion use the Westlaw citation.

[2] The victim-survivors of Mr. Slaven's actions were referred to
by pseudonyms in the Massachusetts State Courts to protect their
privacy.  I will follow that protocol in this Memorandum and
Order.

*Commonwealth* v. *Slaven*, 2015 WL 7289064, at *1 (Mass. App. Ct. Now. 17, 2015) ("*Slaven I*").

**B.   *Ineffectiveness Claim***

Mr. Slaven's petition for federal habeas corpus relief as now before me is limited to his claim that the failure of his counsel to move to suppress pre-arraignment statements he made to Falmouth Police Officer Clifford Harris rendered their assistance constitutionally ineffective.  With respect to this issue, the Massachusetts Appeals Court observed:

> At booking, [Petitioner] executed a Miranda waiver and, later, when he claimed not to understand the Miranda rights form, the officer slowly explained those rights again, and the defendant stated that he understood.  The officer's repeated explanation, and the fact that the defendant had prior experience with the criminal justice system support [Judge Rufo's] conclusion that the defendant's chain of involuntariness was devoid of merit . . . .
>
> Nor could counsel have succeeded on an argument that the defendant was misinformed about his right to counsel.  Before commencing the recorded interview, Officer Harris told the defendant that he had the rights to be silent, to speak with an attorney before questioning, and to have an attorney present at the interview.  The officer also told the defendant that if he could afford an attorney, he could contact one immediately, and that if he could not afford an attorney and wanted one, the officer would take him to be arraigned, at which point he would be appointed an attorney at public expense.[3]  The defendant

---

[3] In addition to these observations by the Massachusetts Appeals Court, I note the underlying record indicates that prior to waiving his *Miranda* rights, Mr. Slaven expressed some concern about the ability of a public defender to provide adequate representation, to which Officer Harris replied that "they do

ultimately did not invoke his right to counsel under
the Fifth Amendment to the United States Constitution
and elected to go ahead with the interview.

*Slaven I*, 2015 WL 7289064, at *1-*2.

## C.   *Procedural Background*

### 1.   State Court Proceedings

Mr. Slaven was indicted in Barnstable County in May and

September of 2011 in Case Nos. 1172-052 and 1172-094,

respectively.  Mr. Slaven was initially represented by appointed

counsel, Thomas Yonce.  Mr. Yonce filed a motion to suppress all

physical evidence seized and statements elicited from Mr. Slaven

on the day of his arrest.  Mr. Yonce later withdrew the motion.

After both Mr. Yonce and Mr. Slaven's first successor counsel

withdrew from Mr. Slaven's representation, another attorney,

Robert Deehan, was appointed. Neither of Mr. Slaven's successor

counsel re-filed or otherwise pursued Mr. Yonce's initial effort

to move for suppression of Mr. Slaven's statements to Officer

Clifford on the day of his arrest.

Following a one-day bench trial, Judge Rufo found Mr.

Slaven guilty of statutory rape, indecent assault and battery on

a person under fourteen, indecent assault and battery on a

---

the best that they can..." and "[i]f you're not happy with who
you got representing you, you could actually tell the judge and
say 'Look it, this guy isn't doing what I, I ask him to do.'"
*See* Dkt No. 41-1 at 6 (S.A. 00445).

person over fourteen, and two counts of incest in Case No. 1172-052, as well as four counts of indecent assault and battery on a child under fourteen and three counts of incest in Case No. 1172-094.  He acquitted Mr. Slaven of three counts of rape of a child with force and two counts of incest in Case No. 1172-052, and of one count of rape of a child with force and one count of incest in Case No. 1172-094.  Prior to sentencing, Judge Rufo granted Mr. Slaven's motion to vacate two of the incest convictions (charged in Case No. 1172-094) on the grounds that the conduct alleged did not amount to a crime at the time the acts were committed.

On May 15, 2013, Judge Rufo sentenced Mr. Slaven to ten to twelve years imprisonment at MCI Cedar Junction on his conviction for forcibly raping S.C. and for two counts of incest as to A.B., as well as an on-and-after sentence of ten years of probation for the remaining counts of conviction.  Mr. Slaven filed a direct appeal of these convictions on May 28, 2013.

Some ten months later, on March 4, 2014, Mr. Slaven filed a motion for a new trial in the Superior Court based on alleged ineffective assistance of counsel for failure to pursue a motion to suppress his statements to Officer Harris, the claim he continues to pursue in this proceeding, as well as a failure to present a witness who could have substantiated his alibi defense that he was in New York taking remedial courses during the time

5

in which the alleged events occurred in Massachusetts.  Judge
Rufo denied this first motion for a new trial on November 3,
2014.

     After Mr. Slaven timely appealed Judge Rufo's denial of his
first motion for a new trial, the Massachusetts Appeals Court
consolidated Mr. Slaven's direct appeal and his appeal of Judge
Rufo's decision to deny him a new trial.  Pursuant to (then-
applicable) Appeals Court Rule 1:28,[4] the Massachusetts Appeals
Court affirmed both of Judge Rufo's decisions in an unpublished
decision dated November 17, 2015.  *See Slaven I*, 88 Mass. App.
Ct. 1113, 40 N.E.3d 1056, (Table) (Mass. App. Ct. 2015).  The
Supreme Judicial Court denied Mr. Slaven's application for
further appellate review, in which only the issue of Mr.
Slaven's unsuppressed statements to Officer Harris, but not
counsel's failure to call a witness, was presented.  *See*
*Commonwealth* v. *Slaven*, 473 Mass. 1109, 44 N.E.3d 861 (Table)
(Mass. 2016).

---

[4] What was formerly Massachusetts Appeals Court Rule 1:28 was
restated as Massachusetts Appeals Court Rule 23.0 as of March 5,
2020, and governs summary disposition by the Appeals Court.  An
appeal may be decided pursuant to this rule when "a panel of the
justices of [the Appeals] [C]ourt [ ] determines that no
substantial question of law is presented by the appeal or that
some clear error of law has been committed which has injuriously
affected the substantial rights of an appellant."  Appeals Court
Rule 23.0(1).

Mr. Slaven then commenced this 28 U.S.C. § 2254 proceeding in this Court on February 29, 2016.  During the pendency of this federal habeas corpus proceeding, Mr. Slaven filed a second motion for a new trial on November 16, 2016 in Superior Court challenging the sufficiency of the evidence and raising additional claims of ineffectiveness.[5]  That motion was denied by Judge Rufo on June 21, 2017, a decision later affirmed by the Massachusetts Appeals Court in another unpublished Rule 1:28 opinion.  *Commonwealth* v. *Slaven*, 96 Mass. App. Ct. 1107, 137 N.E.3d 1087 (Table), 2019 WL 5543047 (Mass. App. Ct. Oct. 28, 2019) ("*Slaven II*").  The Supreme Judicial Court denied further appellate review.  *Commonwealth* v. *Slaven*, 483 Mass. 1109, 141 N.E.3d 93 (Table) (Mass. 2020).  Mr. Slaven's state court proceedings were thus concluded in November 2019.

Meanwhile, in addressing Mr. Slaven's pending motion for federal habeas corpus relief, I denied the Commonwealth's initial Motion for Judgment on the Pleadings without prejudice [Dkt No. 18] on January 5, 2018 and stayed the habeas proceeding

---

[5] As recited in the Massachusetts Appeals Court's Rule 1:28 *Slaven II* opinion, the three new formulated grounds for claiming ineffective assistance of counsel included counsels' (1) declination to seek additional information regarding his identification by one of his victims; (2) failure to move for suppression of that same victim's in-court identification of Mr. Slaven; and (3) advice to waive his right to a jury trial. *Commonwealth* v. *Slaven*, 2019 WL 5543047, at *2-*3 (Mass. App. Ct. Oct. 28, 2019).

to permit Mr. Slaven, assisted by newly appointed federal habeas corpus counsel, to pursue his ultimately unsuccessful appeal of the second motion for a new trial in the state court.

On March 3, 2020, following the exhaustion of all his potential state court remedies, Mr. Slaven filed an amended § 2254 motion [Dkt No. 39] in this Court, to which the Commonwealth responded with a renewed motion for Judgment on the Pleadings on April 10, 2020 [Dkt No. 44].  The amended motion, limited to the pre-arraignment statements issues exhausted in *Slaven I*, presents the precise contention I now must address in Mr. Slaven's federal collateral attack on his state court convictions.

## II
## LEGAL LANDSCAPE

### A.   *Standard of Review*

A federal court may only grant a habeas corpus petition by a person held in state custody when the petitioner has both exhausted his remedies in state court and established that "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(b)(1)(A).  *See generally Rose* v. *Lundy*, 455 U.S. 509, 510 (1982).  A federal habeas corpus court will address the question whether the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Under 28 U.S.C. § 2254(d)(1), a state court's decision is "contrary to" clearly established federal law when the facts of the instant case are "materially indistinguishable from a decision of [the Supreme Court] and nevertheless [the state court] arrives at a result different from [that binding] precedent." *Williams* v. *Taylor*, 529 U.S. 362, 406 (2000).  A state court's decision involves an unreasonable application of clearly established federal law when it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the petitioner's case."  *Id.* at 412.  What makes an application of established Supreme Court precedent unreasonable is "no doubt difficult to define," *id.* at 410, but its necessarily narrow scope can be understood through a review of when it does *not* apply.  If any fair-minded jurist could agree with the state court ruling, then the state court did not unreasonably apply established Supreme Court precedent. *Harrington* v. *Richter*, 562 U.S. 86, 101 (2011).

9

Under 28 U.S.C. § 2254(d)(2), a petitioner may also seek federal habeas corpus relief on the theory that the state court's findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The federal court reviews these findings of fact against a standard of "objective reasonableness" in light of the evidence actually presented. *Williams*, 529 U.S. at 409-412.  Here, the relevant question is whether the state courts reasonably applied established Supreme Court precedent regarding claims of constitutionally ineffective assistance of counsel.[6]

State court rulings are due a high degree of deference, and their decisions must "be given the benefit of the doubt." *Woodford* v. *Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)

---

[6] Mr. Slaven has offered the blanket assertion that he is entitled to relief on all three of these bases (purporting to challenge a ruling that contradicted clearly established Supreme Court precedent, a ruling that involved an unreasonable application of clearly established Supreme Court precedent, and a ruling involving fact finding that was objectively unreasonable based on the evidence presented).  However, there is support for neither of the alternative propositions to the theory of unreasonable application of clearly established Supreme Court precedent.  The state courts identified the proper standard against which to consider his ineffective assistance of counsel claims.  Moreover, the state court fact finding was objectively reasonable.  Indeed, the facts cited by Mr. Slaven himself are largely drawn from the transcript of his conversation with Officer Harris, which is also the evidence the Massachusetts state courts considered in making fact determinations on this issue.

(citing *Lindh* v. *Murphy*, 521 U.S. 320, 333, n.7 (1997));
*Clements* v. *Clarke*, 592 F.3d 45, 47 (1st Cir. 2010), *cert.*
*denied*, 561 U.S. 1014 (2010).  To warrant reversal, the
decisions reached by the state court must be "objectively
unreasonable." *Lockyer* v. *Andrade*, 538 U.S. 63, 75-76 (2003)
(noting that the "objectively unreasonable standard" is more
deferential to state court rulings than [the] "clear error"
standard).

When a petition for habeas corpus is based on claims of
ineffective assistance of counsel, the deferential approach of
federal courts toward state court determination is heightened.
"The clearly established federal law governing ineffective
assistance of counsel claims is the framework established by
*Strickland* [v. *Washington*, 466 U.S. 688 (1984)]."  *Jewett* v.
*Brady*, 634 F.3d 67, 75 (1st  Cir. 2011).  Massachusetts state
courts apply the "functional equivalent" of the *Strickland*
standard, "which requires a 'serious incompetency, inefficiency,
or inattention,' that 'has likely deprived the defendant of an
otherwise available, substantial ground of defence,'" *id.*
(citing *Commonwealth* v. *Saferian*, 315 N.E.2d 878, 883 (Mass.
1974)).  Judge Rufo, in denying Mr. Slaven's motion for a new
trial, applied both *Saferian* and *Strickland* and the Appeals

Court did not disturb that approach.[7]  *See Jewett* v. *Brady*, 634 F.3d at 75 (1st Cir. 2011) (citing *Harrington*, 562 U.S. at 105) ("The Supreme Court has [] reinforced the 'doubly' deferential standard that applies to a state prisoner's claims in a federal habeas petition that a state court unreasonably applied the *Strickland* principles" governing ineffective assistance of counsel analysis); *Yeboah-Sefah* v. *Ficco*, 556 F.3d 53, 56 (1st Cir. 2009) ("to establish constitutionally ineffective assistance of counsel as a ground for federal habeas relief, the petitioner bears a doubly heavy burden").

The Supreme Court has expressly cautioned federal courts to "guard against the dangers of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.  In other words, my review is of the state courts' application of the principles of *Strickland* and *Saferian* to trial counsel's

---

[7] While the Massachusetts Appeals Court cited neither *Strickland* nor *Saferian*, it relied on Judge Rufo's memorandum explaining the reasons for his denying a new trial.  His Memorandum cited and applied both.  Moreover, by reaching its own conclusion that Mr. Slaven could not have succeeded on any motion to suppress, the Appeals Court implicitly found that counsel was not ineffective for declining to pursue a losing motion, which could not have prejudiced Mr. Slaven's defense.

performance rather than a direct analysis of counsel's performance. The questions I must answer, therefore, are whether the arguments or theories that supported the state courts' decisions could have been reached by "fair-minded jurists" and whether such "jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Wetzel* v. *Lambert*, 565 U.S. 520, 524 (2012) (citing *Harrington*, 562 U.S. at 101).

**B.  *Ineffective Assistance of Counsel***

The Sixth Amendment guarantees defendants the right to the assistance of counsel in their defense. U.S. CONST., AMEND. VI.

To support a claim of ineffective assistance of counsel, the defendant must show (1) "counsel's representation fell below an objective standard of reasonableness" judged "on the facts of the particular case, viewed as of the time of counsel's conduct" and (2) counsel's "error had [an] effect on the judgment." *Strickland*, 466 U.S. at 687-88, 690, 691. Both elements must be met for a court to find counsel's representation to have been constitutionally infirm under the Sixth Amendment. Even in cases where counsel clearly made egregious errors, these missteps cannot serve as the grounds to set aside a judgment unless they were so prejudicial to the defendant's case that that they affected the outcome. *Id.* at 691-92. On this prong, the defendant must prove that there is a "reasonable probability

that, but for counsel's unprofessional errors, the result of the
proceeding would have been different." *Id.* at 694.   This
"reasonable probability" standard is a demanding one; it
requires "substantial, not just a conceivable, likelihood of a
different result." *Cullen* v. *Pinholster*, 563 U.S. 170, 189
(2011).   Of course, the inverse is also true: actions by defense
counsel that had a clear impact on the outcome of the case are
not grounds for vacating judgment unless they fall below an
objective standard of reasonable representation. This standard
"must be applied with scrupulous care, lest 'intrusive post-
trial inquiry' threaten the integrity of the very adversary
process the right to counsel is meant to serve." *Harrington*, 562
U.S. at 105 (quoting *Strickland*, 446 U.S. at 689-90).

The Supreme Court has explained that the *Strickland*
standard "is a general one, so the range of reasonable
applications is substantial." *Harrington*, 562 U.S. at 105.   In
that connection, "[r]eviewing courts 'indulge a strong
presumption that counsel's conduct falls within the wide range
of reasonable professional assistance' and represents sound
trial strategy."   *Jewett*, 634 F.3d at 75 (quoting *Strickland*,
466 U.S. at 689).

## C.   Miranda *Warnings*

Under the Fifth Amendment, as explained in *Miranda* v.
*Arizona*, 384 U.S. 436 (1966) and its progeny, persons subject to

14

custodial interrogation[8] have the right to remain silent and consult an attorney.  Accordingly, statements made under such circumstances are inadmissible in the absence of "procedural safeguards effective to secure the privilege against self-incrimination."  *Id.* at 444.

There is "no talismanic incantation," *California* v. *Prysock*, 453 U.S. 355, 359-60 (1981) (per curiam) or set of "magic words," *United* States v. *Acosta*, 741 F.3d 179, 199 n.11 (1st Cir. 2013), that will render a so-called *Miranda* warning effective, *accord Duckworth* v. *Eagan*, 492 U.S. 195, 202-03 (1989), but the suspect must be "clearly advised," of the following:

> [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda*, 384 U.S. at 479.

---

[8] When conducting analysis pursuant to the rights outlined in *Miranda*, "'custody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Howes* v. *Fields*, 565 U.S. 499, 508-09 (2012).  Such circumstances arise when "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Id.* at 509 (quoting *Thompson* v. *Keohane*, 516 U.S. 99, 112 (1995)).  A person is subject to an interrogation when there is express questioning, or its functional equivalent, "that the police should know [is] reasonably likely to elicit an incriminating response from the suspect." *Rhode Island* v. *Innis*, 446 U.S. 291, 300-01 (1980).

Having been advised clearly of his rights, a suspect may voluntarily[9] waive them.  Generally speaking, "cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare." *Dickerson* v. *United States*, 530 U.S. 428, 444 (2000).

### III
### DISCUSSION

The standards for federal habeas corpus review of state court convictions are "difficult to meet . . . because [they] w[ere] meant to be." *Harrington*, 562 U.S. at 104. "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' [and that it is] not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson* v. *Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring)). "The reasons for this approach are familiar. 'Federal habeas review of state convictions frustrates both the States' sovereign power to

---

[9] The government bears the burden of demonstrating that a waiver occurred knowingly and intelligently and that the suspect's election to proceed without exercising the right to remain silent or have counsel present was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," such that it was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran* v. *Burbine*, 475 U.S. 412, 421 (1986).

punish offenders and their good-faith attempts to honor constitutional rights.'" *Id.* (quoting *Calderon* v. *Thompson*, 523 U.S. 538, 555-56 (1998)). Although it represents a vehicle for review, "[s]ection 2254(d) is a part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Id.*

Since the Supreme Judicial Court declined to grant further appellate review, the Massachusetts Appeals Court was the last state court to render a developed opinion on the issue of whether Mr. Slaven's trial counsel were ineffective.[10] The issue before me is whether the Appeals Court unreasonably applied the *Strickland* and *Saferian* principles to reach a decision that was clearly contrary to established federal law. This case falls far short of the "extreme malfunctions" federal habeas corpus relief is intended to correct. *Harrington*, 562 U.S. at 104 (citation omitted).

The Appeals Court's decision to affirm Judge Rufo's denial of a new trial was objectively reasonable. It was not unreasonable for the state court to find that Officer Harris's

---

[10] *See Wilson* v. *Sellers*, 138 S. Ct. 1188, 1192 (2018) (federal habeas court should "look through" . . . to the last related state-court decision that [ ] provide[s] a relevant rationale" when conducting analysis under 28 U.S.C. § 2254. The federal court "reviews the specific reasons given by the state court and defers to those reasons if they are reasonable.").

comments regarding Mr. Slaven's opportunity to call an attorney *if he could afford one* <u>pre-arraignment</u>,[11] did not render either Officer Harris's communication of Mr. Slaven's Fifth Amendment rights, or Mr. Slaven's subsequent waiver of them, infirm such that any reasonable counsel would have moved to suppress the statements that followed.  Officer Harris plainly did not provide Mr. Slaven with any misinformation.

Moreover, it was reasonable for the state court(s) to find that Mr. Slaven's claims regarding ineffective assistance of counsel would have failed the prejudice prong of *Strickland* analysis because a reasonable strategic decision to decline to

---

[11] It is important to note that only the ineffective assistance branch of the Sixth Amendment is at issue here.  That, in turn, only implicates the Fifth Amendment.  While the Fifth Amendment right to counsel attaches whoever a person is subject to custodial interrogation, *see supra* at n.8, the Sixth Amendment right to counsel arises in a narrower set of circumstance that are tied to the progress of the case in court.  At a minimum, the Sixth Amendment provides "that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'"  *Brewer* v. *Williams*, 430 U.S. 387 (1977) (quoting *Kirby* v. *Illinois*, 406 U.S. 682, 689 (1972)).  Here, no judicial proceedings had been initiated against Mr. Slaven, so his Sixth Amendment right to counsel had not yet attached.  The First Circuit has held squarely that a federal complaint does not qualify as the initiation of a formal charge.  *United States* v. *Boskic*, 545 F.3d 69, 82-84 (1st Cir. 2002).  Mr. Slaven does not contend state booking interviews in connection with a state court complaint should be treated differently.  Thus, the underlying constitutional issue before me is one governed by the Fifth Amendment protection against self-incrimination rather than the Sixth Amendment right to counsel.

pursue a motion that has such a modest likelihood of success can hardly be said to have prejudiced the defense case.

As a general matter, I must deny a petition for relief under 28 U.S.C. § 2254 where any reasonable jurists could find counsel's representation of a petitioner objectively reasonable. Even where other reasonable jurists might conceivably disagree about the reasonableness of the representation received by the petitioner, I am still obligated to deny such a petition for federal habeas corpus relief.  Similarly, if any reasonable jurist could find that failure to pursue a motion to suppress these statements would have been unlikely to prejudice Mr. Slaven's case, I would be required to deny relief on those grounds as well.  Here, I am faced with what appears to be a reasonable representation by Mr. Slaven's state court trial counsel in declining to raise what the state court viewed as at best a palely colorable *Miranda* claim.  Moreover, it was a reasonable conclusion reached by the state courts that a motion to suppress would not have impacted Mr. Slaven's case, given its low chance of success.  The analysis of the Appeals Court was fully supported by the evidence of record.  Accordingly, I find and conclude Mr. Slaven is not entitled to federal habeas corpus relief under 28 U.S.C. § 2254.

## IV
## CONCLUSION

For the reasons set forth more fully above, I GRANT Respondent's Motion [Dkt No. 44] for Judgment on the Pleading and direct the Clerk to enter judgment dismissing this petition.


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE